IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DAWN PFEIFFER, | ] |
| Plaintiff, | ] |
| vs. | ] Case No: 1:18-cv-136 |
| MED INVESTORS DEVELOPMENT, LLC d/b/a ONE TO ONE HEALTH, | ] |
| Defendant. | ] |

## COMPLAINT

Comes now the Plaintiff, Dawn Pfeiffer, by and through counsel and for cause of action will respectfully show to the Court as follows:

## JURISDICTION & VENUE

1. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28. U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case controversy.

2. The acts complained of took place in Chattanooga, Tennessee; therefore, proper venue for this action lies within the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff, Dawn Pfeiffer, is an adult female individual and citizen of the United States who resides in Sumner County, Hendersonville, Tennessee.

4. Plaintiff is a former employee of Med Investors Development, LLC doing business as One to One Health ("Defendant").

5. Plaintiff was an employee within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(e)(1) and the Tennessee Public Protection Act ("TPPA"), T.C.A. § 50-1-304(1).

6. Defendant, is a domestic corporation or similar business entity and regularly conducts business at 246 East 11th Street, Suite 206, Chattanooga, Tennessee.

7. Defendant is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the TPPA, T.C.A. § 50-1-304(2).

8. Defendant comprises an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

9. Defendant has done in excess of $500,000.00 in annual dollar volume of business in the past twelve months.

## FACTUAL ALLEGATIONS

10. Defendant operates and manages on-site wellness clinics for employers across Middle Tennessee.

11. Plaintiff worked for Defendant from January 15, 2017 until March 23, 2018.

12. Prior to her hiring, Defendant required Plaintiff complete a leadership personality test.

13. The leadership personality test described Plaintiff as having a "compliant and rule-conscious nature," among other characteristics.

14. Defendant hired Plaintiff to work as the Practice Director of Sumner County.

15. Plaintiff performed well in her position and never received any disciplinary actions.

16. In or around June 2017, Defendant appointed Plaintiff to the company's compliance board to oversee compliance issues facing the company.

17. In or around October 2017, Defendant promoted Plaintiff to Director of Clinical Operations and provided her with a raise.

18. As Director of Clinical Operations, Plaintiff oversaw all operations for Defendant's seven clinics across Middle Tennessee.

19. Specifically, Plaintiff was responsible for the staff management, recruiting, vendor supply and inventory as well as maintaining compliance for each clinic.

20. In or around November 2017, Defendant eliminated its human resources and payroll position outsourcing the work to another company.

21. Following the elimination of the human resources and payroll position, Plaintiff raised compliance concerns to Defendant regarding employees being paid improper amounts or not at all.

22. Plaintiff also raised compliance concerns to Defendant regarding ongoing potential violations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

23. In or around December 2017, Plaintiff collaborated and worked closely with other executives of Defendant in the bidding process for a new client.

24. In or around January 2018, Defendant tasked Plaintiff with additional responsibility of overseeing a new clinic for the Electric Power Board in Chattanooga, Tennessee.

25. Defendant also provided Plaintiff with another raise, her second in three months.

26. In overseeing the opening of the new clinic, Plaintiff continued to encounter several compliance issues including the ongoing payroll issues and potential HIPAA violations at this specific location.

27. Plaintiff also became aware one of the physicians had been prescribing a larger than normal number of prescriptions for Schedule II controlled substances.

28. The physician failed to record many of the Schedule II prescriptions in the controlled substance data base as required by T.C.A. § 53-10-304.

29. T.C.A. § 53-10-304(d) provides in relevant part,

> The data required by this part shall be submitted in compliance with this part to the database by any healthcare practitioner who dispenses a controlled substance contained in Schedules II, III, and IV, and Schedule V controlled substances identified by the committee as demonstrating a potential for abuse, or by any healthcare practitioner delegate who is designated to submit data on a healthcare practitioner's behalf.

30. The physician attempted to hide the number of prescriptions written for controlled substances from Plaintiff.

31. On or around January 10, 2018, Plaintiff raised her concerns to Defendant's CEO Dr. Keith Helton.

32. On or around January 11, 2018, Plaintiff spoke with both physicians at the Chattanooga clinic location instructing them not to write prescriptions for the long terms use of controlled substances.

33. Plaintiff also instructed both physicians that any patient needing a prescription for longer than seven days should be sent to a pain specialist.

34. Following her conversation with the Chattanooga clinic physicians, Plaintiff learned the physician in question had written prescriptions for controlled substances at a rate of 20-23%.

35. Plaintiff knows through her work experience rates above 15-18% are routinely scrutinized by the Drug Enforcement Administration ("DEA").

36. Aware the prescription rates were high for this particular doctor, Plaintiff alerted Defendant about the high rates.

37. Plaintiff reported the physician to the DEA's monitoring program.

4

38. In or around January and February 2018, Defendant continued experiencing problems related to the proper payment of its employees' wages.

39. During this time, Defendant performed health risk assessments for many patients resulting in additional work for many of its employees beyond their regular 40 hours per week.

40. While performing the health risk assessments, Defendant paid its employees a different rate for performing the same type of work they typically performed.

41. Despite paying its employees a separate rate for the health risk assessment work performed, Defendant failed to compensate its employees at a rate of at least one and one-half their regular rates of pay for all hours over 40.

42. 29 U.S.C. § 207(a)(1) provides in relevant part, "…[N]o employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

43. In other instances, Defendant failed to provide any compensation to some employees where work was performed.

44. 29 U.S.C. § 206(a)(1)(c) provides in relevant part, "Every employer shall pay to each of his employees…not less than…$7.25 an hour."

45. When Defendant did provide payment to these employees, the company often failed to provide the correct amount owed to each employee.

46. Defendant failed to provide complete payment to these employees until weeks or sometimes months later.

47. In or around February 2018, Defendant retained a consultant to evaluate operations of the company.

5

Case 1:18-cv-00136-DCLC-SKL Document 1 Filed 06/22/18 Page 5 of 9 PageID #: 5

48. On or around February 9, 2018, Plaintiff spoke with the consultant about her concerns regarding operations of the company including Defendant's failure to properly compensate its employees and Defendant's failure to maintain HIPAA compliance.

49. The consultant provided Defendant a detailed report of his findings, but Defendant did not provide Plaintiff a copy of the report.

50. On or around February 15, 2018, Plaintiff attended a sales presentation in Asheville, North Carolina on behalf of Defendant following an invitation from Dr. Helton.

51. Plaintiff presented material on behalf of Defendant covering the topics of clinic operations and clinic management.

52. On or around March 2, 2018, Defendant required Plaintiff meet with a psychologist retained by Defendant who was performing a global assessment of the company.

53. During her meeting, Plaintiff expressed concerns about Defendant's failure to properly compensate its employees and Defendant's failure to maintain HIPAA compliance.

54. On or around March 15, 2018, Plaintiff received notice from an employee who was still being paid incorrectly.

55. In response, Plaintiff contacted Dr. Helton via email notifying him of Defendant's continuing failure to properly compensate employees.

56. Plaintiff suggested that another company perform payroll and human resources processes.

57. Dr. Helton responded via email stating, "This is not a corporate compliance issue or a Tennessee labor law issue since resolution happened promptly but since you brought it up, your email has been forwarded to legal counsel to help me evaluate any and all legal action. Your objections have been noted."

6

Case 1:18-cv-00136-DCLC-SKL   Document 1   Filed 06/22/18   Page 6 of 9   PageID #: 6

58. Dr. Helton then sent a follow up text message to Ms. Pfeiffer stating, "I have interviewed 2 other payroll companies. I have interviewed 2 other IT groups. I have a completed audit on-going of finance. And now I will be adding in our HR consultant time as well as legal time and all I really needed was a bit of patience."

59. On or around March 16, 2018, Ms. Pfeiffer followed up with Dr. Helton via email specifying that any of Defendant's attempts to correct underlying pay issues were done months later.

60. On or around March 23, 2018, Dr. Helton terminated Plaintiff.

61. Dr. Helton told Plaintiff she had been terminated for not being "loving, caring and compassionate enough for [Defendant's] new culture."

62. Defendant never issued any warning, corrective action or any formal discipline to Plaintiff prior to her termination.

63. The reason given by Defendant for Plaintiff's termination was false and pretext.

64. Defendant terminated Plaintiff because of her complaints about illegal activity.

### COUNT I- VIOLATION OF THE FAIR LABOR STANDARDS ACT: WRONGFUL TERMINATION (29 U.S.C. § 215)

65. Plaintiff hereby re-alleges the foregoing paragraphs as though fully set forth herein.

66. Plaintiff engaged in protected activity by reporting employee wage issues related to minimum wage and overtime compensation under the FLSA.

67. Defendant took adverse employment actions against the Plaintiff; namely, terminating her employment.

68. Pursuant to 29 U.S.C. § 215, Plaintiff was entitled to engage in and assert FLSA protected activities and rights without retaliation.

69. A causal link exists between the Defendant's decision to terminate Plaintiff and the Plaintiff engaging in FLSA protected activity.

70. Defendant did not terminate Plaintiff for a legitimate, non-retaliatory reason and any reason given by Defendant would be pretextual in nature.

71. As the direct and proximate result of Defendant's knowing and willful violation of 29 U.S.C. § 215(a)(3), Plaintiff has suffered damages.

## COUNT II- VIOLATION OF THE TENNESSEE PUBLIC PROTECTION ACT
## (TENN. CODE ANN. § 50-1-304)

72. Plaintiff hereby re-alleges the foregoing paragraphs as though fully set forth herein.

73. Plaintiff engaged in protected activity by refusing to be silent about Defendant's illegal activities.

74. Defendant terminated Plaintiff exclusively for her refusal to remain silent about Defendant's illegal activities.

75. Pursuant to Tenn. Code Ann. § 50-1-304, Plaintiff was entitled to engage in and assert protected activities and rights without retaliation.

76. An exclusive causal link exists between the Defendant's decision to terminate Plaintiff and the Plaintiff engaging in protected activity.

77. Defendant did not terminate Plaintiff for a legitimate, non-retaliatory reason and any reason given by Defendant would be pretextual in nature.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1) all amounts of wages that Plaintiff should have received under federal and state law but for Defendant's willful violation of her rights, plus an equal amount in liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b);

(2) all reasonable attorney's fees, costs and interest pursuant to federal and state law;

(3) the sum of money determined by the fact finder to be sufficient to compensate her for the damages complained of herein;

(4) all punitive damages; and

(5) any such other legal or equitable relief as may be appropriate or to which she may be entitled under federal and state law.

Respectfully Submitted,

**THE EMPLOYMENT & CONSUMER LAW GROUP,**

 /s/ A. RYAN SIMMONS
**JONATHAN A. STREET, BPR No. 021712**
**A. RYAN SIMMONS, BPR No. 031456**
Attorneys for Plaintiff
525 4th Avenue South
Nashville, TN 37210
(615) 353-0930